UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

AMY LYNNE WEBSTER,                    )
                                      )
                Plaintiff,            )
                                      )
v.                                    )        No.:   3:14-CV-253-TAV-CCS
                                      )
CAROLYN W. COLVIN,                    )
Acting Commissioner of Social Security, )
                                      )
                Defendant.            )

## MEMORANDUM OPINION

Before the Court is plaintiff's Motion for Summary Judgment and Memorandum

in Support [Docs. 17, 18], as well as defendant's Motion for Summary Judgment and

Memorandum in Support [Docs. 19, 20].  Plaintiff Amy Lynne Webster seeks judicial

review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the

defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the

Commissioner").

On April 26, 2010, plaintiff protectively filed an application for disability

insurance benefits ("DIB") and supplemental security income ("SSI") with an alleged

onset date of July 1, 2007 [Tr. 141–49, 164].  The Social Security Administration denied

plaintiff's application initially and upon reconsideration [Tr. 91–94, 101–04].  Plaintiff

timely filed her request for a hearing and appeared before Administrative Law Judge

Robert L. Erwin on February 23, 2012, in Knoxville, Tennessee [Tr. 110, 36].  The ALJ

issued an unfavorable decision on May 31, 2012 [Tr. 17–34], which plaintiff appealed but the Appeals Council later declined to review [Tr. 1–4, 15–16].

Having exhausted her administrative remedies, plaintiff filed a complaint with this Court on June 12, 2014, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.    ALJ FINDINGS

The ALJ made the following findings:

> 1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2.    The claimant has not engaged in substantial gainful activity since July 1, 2007, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).
>
> 3.    The claimant has the following severe impairments: history of vertigo; bipolar disorder; possible borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).
>
> 5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations except the claimant should avoid hazards. In addition, the claimant could understand and remember one-three step tasks, concentrate and persist for two hour periods, should avoid

2

interaction with the general public but can interact with co-workers and supervisors, within the restrictions applied above, would work better with things than people and could adapt to change and set independent goals.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on October 4, 1982, and was twenty-four years old, which is defined as a younger individual age eighteen to forty-nine, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 22–28].

## II.    DISABILITY ELIGIBILITY

This case involves an application for DIB and SSI benefits. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. §

3

423(a)(1). To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed

4

impairment, claimant is presumed disabled without further inquiry.

4.    If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.    Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).  Plaintiff bears the burden of proof at the first four steps.  *Walters*, 127 F.3d at 529.  The burden shifts to the Commissioner at step five.  *Id.*  At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g).  Substantial evidence is "more

5

than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

6

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." *Wilson,* 378 F.3d at 546–47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. *See id.* at 547.

On review, plaintiff bears the burden of proving his entitlement to benefits. *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

## IV.   EVIDENCE

### A.   Medical Evidence

On April 26, 2010, plaintiff protectively filed an application for DIB and SSI with an alleged onset date of July 1, 2007 [Tr. 141–49, 164]. Plaintiff was born on October 4, 1982 [Tr. 164]. She reported that she completed high school and was not enrolled in special education classes [Tr. 170]. Plaintiff reported past relevant work as a grocery store clerk and office cleaner [Tr. 171]. Plaintiff alleged that she ceased work due to her conditions on July 1, 2007, which included bipolar disorder, high blood pressure, attention deficit disorder ("ADHD"), thyroid issues, vertigo, and migraines [Tr. 169–70]. Plaintiff previously filed for social security benefits and an ALJ issued an unfavorable decision on April 20, 2010 [*See* Tr. 61–78].

7

### 1. Treating physicians and vocational analyses

Plaintiff received psychiatric treatment at the Center for Family Psychiatry from 1998 through 2002 [Tr. 636–77]. In February 2001, Dr. John Robertson, Jr., penned a letter concerning plaintiff's conditions [Tr. 638]. He stated that he treated plaintiff for bipolar disorder and ADHD. *Id.* She was prescribed Seroquel, Topamax, and Levoxyl, and Dr. Robertson noted that plaintiff was doing well on her medication "but continues to have some mood instability." *Id.* Dr. Robertson assessed that plaintiff "continues to have functional limitation socially that present[s] a vocation handicap. In other words, it would be difficult for her to maintain a job due to a new list of expectations in work situations and difficulty modulating impulses and emotional behavior." *Id.* However, Dr. Robertson found that her "[p]rognosis is good as long as she continues her medications and vocational rehabilitative services." *Id.*

Plaintiff was treated at Interfaith Health Clinic for a variety of health issues from 2002 through 2008 [Tr. 372–415]. She was diagnosed with bipolar disorder, hyperthyroidism, obesity, and shoulder pain in 2006 [Tr. 397–98]. Plaintiff sought treatment for her psychiatric impairments at Cherokee Health Systems ("CHS") from 2001 through 2011 [Tr. 416–46, 464–81, 523–26, 548–61, 626–35, 678–93].

CHS Staff Psychiatrist, Dr. Paul D'Cruz, treated plaintiff for bipolar disorder with a history of psychotic features, anxiety disorder, and borderline intellectual functioning [Tr. 418–43]. From March 2009 through February 2010, Dr. D'Cruz found that plaintiff was generally doing fairly well. *See Id.* Plaintiff was prescribed Abilify, Trazodone, and

8

Strattera [Tr. 422]. Plaintiff stated that she "loves the Strattera and thinks it is really helping her focus better and pay attention . . . Her mom says she has been less moody." *Id.* In August 2009, plaintiff reported that "she is doing well . . . She has applied for disability and not heard back anything" [Tr. 420]. In February 2010, plaintiff was "upset" because "the vocational rehab person who tested her yesterday for a few hours recommended she could work as a dog groomer" [Tr. 418]. Dr. D'Cruz found that "[g]enerally, she seems to be doing fair. She has been fairly stable on the Strattera, trazodone, and Abilify." *Id.* Dr. D'Cruz made similar findings in August 2010, noting that plaintiff was happy about receiving her driver's license and that "[s]he likes driving" [Tr. 525]. Dr. D'Cruz found that plaintiff was "doing fair from a psychiatric standpoint." *Id.*

Plaintiff was treated by Dr. John Doughtrey of Knoxville Neurology Clinic for a "functional sensory examination[,]" bipolar disorder, ADHD, hypothyroidism, and hypertension [Tr. 469–70]. Plaintiff was referred to Dr. Doughtrey by Dr. Jeffrey Fokens of CHS, who had diagnosed plaintiff with vertigo, hypothyroidism, Gastroesophageal reflux disease, obesity, metromenorrhagia, and psychiatric issues [Tr. 469, 474–80]. Dr. Doughtrey found that her headaches and dizziness were "probably benign positional vertigo with possible mixed headaches" [Tr. 470]. Dr. Doughtrey concluded that "patient's neurologic examination suggests there is a major functional component to her complaints. I do not find a specific abnormality on clinical examination. I have recommended an MRI scan to be sure there is no evidence of demyelinating disease" [Tr.

9

471]. The results of an MRI of plaintiff's brain conducted on January 11, 2010, were normal [Tr. 454].

## 2. Non-Treating Physicians

Mr. Terry Albert submitted a vocational evaluation in 2001 when plaintiff was eighteen years of age [Tr. 639–44]. He noted that plaintiff scored in the range of mentally deficient or borderline intellectual functioning with a full scale IQ score of 68 [Tr. 640–41]. Mr. Albert recommended that plaintiff "be placed in a position that gives her the opportunity to work alone or with one or two other people but in close proximity to someone who can supervise in case assistance is needed" [Tr. 644]. He concluded that the "effects of the bipolar disorder and personality disorder will make long term employment difficult unless some of these issues can be addressed. I believe she will do best in an environment that is not fast paced and where she does not feel overwhelmed by her responsibilities." *Id.*

H. Abraham Brietstein, Ph.D., conducted a psychological evaluation on December 1, 2009, for the purpose of vocational planning, and upon referral from Vocational Rehabilitation Services in regards to the Work Adjustment Program with Goodwill Industries [Tr. 238, 267–70]. Dr. Brietstein conducted a Wechsler Adult Intelligence Scale-IV ("WAIS-IV") test, and plaintiff received a full scale IQ score of seventy-one [Tr. 268–69]. Dr. Brietstein found that plaintiff "functions within the borderline range of intelligence" [Tr. 269]. He also conducted a Personality Assessment Inventory ("PAI") and assessed that, "[a]ccording to the results of the PAI, Amy both exaggerated the

severity of her complaints and gave infrequent responses, which suggests that she had significant problems attending to or interpreting the questions. As such, the results are considered invalid." *Id.* Dr. Brietstein recommended that:

1. Amy may be an appropriate candidate for supported employment, although will need to learn to tolerate stress much more easily and will need to accept constructive criticism from her employers.
2. Amy needs to continue her current treatment and will need considerable encouragement to re-enter the work force.
3. Should she continue to be unable to sustain employment, even with the support of a job coach, she is encouraged to pursue Social Security Disability Benefits, which she has already attempted to do.

[Tr. 270].

The Work Adjustment Program closed plaintiff's case on August 29, 2011, due to plaintiff's "consistently poor judgment in the workplace once employed and exhibited difficulty working with others on multiple occasions during the time she was employed at Goodwill Industries – Knoxville, Inc." [Tr. 241]. Plaintiff was dismissed from the program as "Not Rehabilitated" after she refused to complete her two-week notice at Goodwill Industries, "became verbally aggressive, shouting at the Program Manager[,]" and caus[ed] a scene in the middle of the store" with her husband [Tr. 240].

Dr. Celia Gulbenk submitted a non-examining physical RFC analysis on July 21, 2010 [Tr. 482–90]. She found no established exertional, postural, manipulative, visual, communicative, or environmental limitations [Tr. 482–86]. Dr. James Moore affirmed this assessment on January 24, 2011 [Tr. 537].

11

Dr. Martha Wike conducted a psychological evaluation on August 30, 2010 [Tr. 491]. Dr. Wike noted that the agency did not provide any records but that plaintiff's attorney supplied "50 or 60 pages of records, however, and these were reviewed." *Id.* Dr. Wike considered plaintiff's school records, including a full scale IQ score of 94 taken when plaintiff was in the fourth grade. *Id.* Dr. Wike also reviewed treatment records from CHS and Dr. Brietstein's vocational evaluation [Tr. 492]. Plaintiff informed Dr. Wike that she was applying for "disability benefits because 'I can't get along with nobody and I can't work as fast as others and I get so angry and then I turn around and I get fired. I didn't ask to be born like this.'" *Id.* Plaintiff also reported that she was treated by "John Robertson, M.D., a child and adolescent psychiatrist." *Id.* Plaintiff informed Dr. Wike that on a good day she felt calm and did not cry and that "the day of the evaluation 'has been awful'" [Tr. 494]. Dr. Wike diagnosed plaintiff with Bipolar I Disorder, ADHD, and generalized anxiety disorder [Tr. 495]. She assessed that Plaintiff was moderately impaired in her ability to understand and remember instructions, moderately to markedly impaired in her ability to sustain attention and concentration, and markedly impaired in her ability to interact socially and adapt to changes in routine or the workplace. *Id.*

Dr. Carole Kendall submitted a psychiatric RFC assessment on November 1, 2010 [Tr. 497–521]. She diagnosed plaintiff with borderline intellectual functioning, ADHD, mood disorder, bipolar syndrome, and generalized anxiety disorder [Tr. 506–10]. She assessed that plaintiff was mildly limited in her activities of daily living; moderately

12

limited in her ability to maintain social functioning, concentration, persistence, or pace; and had no episodes of decompensation [Tr. 515]. Dr. Mason Currey affirmed this assessment on January 7, 2011 [Tr. 535].

### B. Other Evidence

The ALJ issued an unfavorable decision on May 31, 2012 [Tr. 17–34]. In assessing plaintiff's severe impairments, the ALJ considered her treatment records from CHS, Dr. Robertson, and Dr. Doughtrey, as well as the medical and vocational opinions of plaintiff's non-treating and non-examining physicians [Tr. 23]. In crafting his RFC, the ALJ explained that "[t]he opinion of Dr. Robertson, the claimant's treating psychiatrist, and Mr. Albert, vocational counselor, are accommodated in the residual functional capacity outlined above. Said assessments are more consistent with the overall medical evidence of record and the claimant's longitudinal treatment history" [Tr. 26]. The ALJ "decline[d] to assign great weight to the opinion of Dr. Wike" and found that plaintiff's "ability to perform such a wide range of daily activities not only tends to negate the degree of her complaints of pain and other subjective limitations" [Tr. 26–27].

## V. POSITIONS OF THE PARTIES

Plaintiff contends that the ALJ's RFC assessment is flawed. She specifically contends that the ALJ erred in weighing the opinions of treating and non-treating medical and vocational sources and assessing her credibility. The Commissioner responds that the ALJ's RFC is supported by substantial evidence and that he properly weighed the medical evidence in determining plaintiff's functional capabilities.

## VI.   ANALYSIS

The Court will address each of the issues presented by plaintiff in turn.

### A.   RFC Analysis

Plaintiff makes several arguments in regards to the ALJ's RFC determination. The Court interprets these arguments to center around two main issues: the ALJ's consideration of the medical and vocational evidence and the ALJ's determination of credibility. The Court will consider the ALJ's RFC assessment broadly and then directly address the issues presented by plaintiff. In order to assess the ALJ's decision that plaintiff is not disabled, the Court must first inquire as to whether the ALJ's RFC determination was based on substantial evidence. Having done so, the Court finds in the affirmative.

An ALJ is responsible for determining a plaintiff's RFC after reviewing all the relevant evidence of record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). An ALJ may consider both medical and non-medical evidence in reaching an RFC determination. *Id.* A plaintiff's RFC is the most a plaintiff can do despite his or her impairments. 20 C.F.R. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "'[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.'" *Griffeth v. Comm'r*

14

*of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. Feb. 09, 2007) (quoting *Yang v. Comm'r of Soc. Sec.*, No. 00–10446–BC, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004)).

A court will not disturb an ALJ's RFC determination so long as the finding is supported by substantial evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). However, in determining a claimant's RFC, the ALJ must "make findings of fact" as to her functional and physical limitations. *Simpson v. Colvin*, 3:11-0481, 2013 WL 4456383, at *17 (M.D. Tenn. Aug. 16, 2013), *adopted by,* 3:11-CV-00481, 2013 WL 4780082 (M.D. Tenn. Sept. 4, 2013). Further, the ALJ "must 'articulate with specificity reasons for the findings and conclusions that he or she makes' to facilitate meaningful judicial review." *Wright v. Astrue*, 1:07-CV-226, 2009 WL 890051 (E.D. Tenn. Mar. 26, 2009) (quoting *Bailey v. Comm'r of Soc. Sec.*, 1999 WL 96920, *4, (6th Cir. Feb. 2, 1999)).

The Court finds that the ALJ's RFC analysis adheres to agency procedure and is supported by substantial evidence. Below the Court explains the basis for this decision.

### 1.     Weighing the Medical and Vocational Evidence

Plaintiff argues that the ALJ erred in his consideration of the medical and vocational evidence in regards to both her treating, non-treating, and non-examining physicians and vocational experts. The Court disagrees.

Under the Social Security Act and its implementing regulations, an ALJ will consider all the medical opinions in conjunction with any other relevant evidence received in order to determine if a claimant is disabled. 20 C.F.R. § 404.1527(b). If the

15

opinion of a treating physician is supported by the record, it is entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). Where an opinion does not garner controlling weight, the appropriate weight to be given an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2–6) and 416.927(c)(2–6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996).

16

Nonetheless, although a treating physician's diagnosis is entitled to great weight, "the ultimate decision of disability rests with the administrative law judge." *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)). An ALJ does not measure medical evidence in a vacuum, but rather considers physician opinions in conjunction with the record as a whole. *See* 20 C.F.R. § 404.1527(b) (explaining that in considering medical opinions, the SSA "will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). The agency will consider such evidence as "statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work." 20 C.F.R. § 404.1529(a).

The treating physician rule is inapplicable where treating physicians have failed to provide medical opinions. If the record is replete with treatment records, but absent any medical opinion regarding functional capacity, treating physicians are not entitled to controlling weight, nor must the court address the factors set forth 20 CFR §§ 404.1527(c) and 416.927(c). *See Terrell v. Comm'r of Soc. Sec.*, 12-CV-11781, 2013 WL 5178541, at *12 (E.D. Mich. Sept. 10, 2013) (explaining that where a plaintiff cannot cite to any treating physician opinion in the record that is contrary to the ALJ's decision "the undersigned cannot conclude that the ALJ erred in evaluating the record regarding these physicians"); *see also Hazelwood v. Comm'r of Soc. Sec.,* 2012 WL 5930439, at *4

17

(S.D. Ohio Nov. 27, 2012) (finding that "[w]ithout any opinion evidence from plaintiff's treating physicians, the Court cannot conclude that the ALJ erred by not applying the factors enumerated in §§ 404.1527(c) and 416.927(c)"); *Pedigo v. Astrue*, 1:09-CV-93, 2009 WL 6336228, at *6 (E.D. Tenn. Dec. 14, 2009) (internal citations omitted) (explaining that the "rule of deference to a treating physician's opinion, however, is inapposite when the treating physician has not offered an opinion to which the ALJ can defer") (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009)).

In considering non-treating physician opinions, an ALJ is "not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists," but the ALJ must "consider findings of State agency medical and psychological consultants or other program physician, psychologists, and other medical specialists as opinion evidence[.]" 20 C.F.R. § 404.1527(e)(2)(i). The ALJ must evaluate the consultative physician's opinion using the relevant factors in 20 C.F.R. §§ 404.1527(c)(2–6) and 416.927(c)(2–6), the same factors used to analyze the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(e)(2)(iii); *Jericol Mining, Inc. v. Napier*, 301 F.3d 703, 710 (6th Cir. 2002) ("We believe that the same factors that justify placing greater weight on the opinions of a treating physician are appropriate considerations in determining the weight to be given an examining physician's views."); *Sommer v. Astrue*, No. 3:10-CV-99, 2010 WL 5883653, at *6 (E.D. Tenn. Dec. 17, 2010) (internal citations omitted) ("The Regulations and Rulings require an ALJ, in the absence of a treating source who enjoys controlling weight, to weigh the opinions of one-time

18

examining physicians and record-reviewing physicians under the regulatory factors, including supportability and consistency.") (citing 20 C.F.R. § 404.1527(d) & (f)).

The ALJ must consider all medical opinions in conjunction with any other relevant evidence received in order to determine if a claimant is disabled. 20 C.F.R. § 404.1527(b). Pursuant to Social Security Ruling 06–03p, an ALJ may also consider evidence from "other sources" as well, such as vocational counselors. *See* WL 2329939, at *2 (S.S.A. Aug. 9, 2006) (explaining that although these sources "cannot establish the existence of a medically determinable impairment[,]" they have "special knowledge of the individual and may provide insight into the severity of the impairments and how it affects the individual's ability to function"). However, an ALJ need not specifically address each medical opinion or piece of evidence in order to adequately consider the record in its entirety. *See Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) ("[T]he fact that the ALJ's opinion failed to discuss all of the testimony and evidence presented to him does not mean that the ALJ 'failed to consider' the evidence.") (quoting *NLRB v. Beverly Enterprises-Massachusetts*, 174 F.3d 13 (1st Cir. 1999)).

The Court will address the issues raised by plaintiff regarding the medical and vocational evidence in turn.

### a. Dr. Robertson and Mr. Albert

Plaintiff argues that the ALJ specifically erred in his consideration of Dr. Robertson and Mr. Albert [Doc. 18 at 16–19]. Dr. Robertson was a treating physician and Mr. Albert qualifies as an "other source" pursuant to Social Security Ruling 06–03p.

19

However, these opinions and reports both occurred many years prior to plaintiff's alleged onset date and thus the Court clarifies at the outset that such a length of time minimizes their relevance. *See Wilson v. Comm'r of Soc. Sec.*, No. 3:13-CV-579, 2014 WL 7015615, at *12 (E.D. Tenn. Dec. 11, 2014) ("The Court finds that a psychological examination, conducted eight years prior the alleged onset date and preceding a period in which plaintiff sustained substantial gainful activity, is irrelevant to plaintiff's application.") (citing *Davis ex rel. Smith v. Comm'r of Soc. Sec.*, No. 1:08–CV–00291, 2009 WL 2884142, at *10 (S.D. Ohio Sept.1, 2009)); *McAley v. Comm'r of Soc. Sec.*, No. 08-14504, 2010 WL 1064133, at *8 (E.D. Mich. Feb. 10, 2010) (internal citations omitted) (noting that "the parties' dispute is oddly limited to the treating physician opinions offered in 1997 and 1998, which are, at best minimally relevant to whether there was substantial evidence to support the ALJ's decision regarding plaintiff's impairment in the years 2000–2003").

The Court notes that not all medical or opinion evidence collected prior to the alleged onset date is *per se* irrelevant. *See DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 414 (6th Cir. 2006) ("We recognize that evidence presented at an earlier hearing or predating the onset of disability, when evaluated *in combination with later evidence,* may help establish disability.") (emphasis in the original). However, medical evidence becomes less relevant as the gap of time between the opinion and the alleged onset date widens. *See* 20 C.F.R. § 404.1512(d)(2) ("By 'complete medical history,' we mean the records of your medical source(s) covering at least the 12 months preceding the

20

month in which you file your application."); *Davis ex rel. Smith*, 2009 WL 2884142, at *10 (discounting an opinion because it was obtained nine months prior to the alleged onset date). Further, as seen in *Wilson*, the opinion carries even less weight when it precedes "a period in which plaintiff sustained substantial gainful activity" 2014 WL 7015615, at *12.

Such is the case here. Dr. Robertson, a specialist in child and adolescent psychology, [*see* Tr. 492], treated plaintiff from 1998 through 2002 [Tr. 636–77]. Dr. Robertson's opinion was included in a letter from February 2001 [Tr. 638]. Mr. Terry Albert submitted a vocational evaluation in 2001 when plaintiff was eighteen years of age [Tr. 639–44]. Plaintiff reported past relevant work as a grocery store clerk in 2003 and office cleaner from 2003 through 2009, with an alleged onset date of July 1, 2007 [Tr. 171, 164]. The Court notes that over six years elapsed between both Dr. Robertson's and Mr. Albert's opinions and plaintiff's alleged onset date. Further, plaintiff was able to sustain gainful employment during that time. Therefore, the Court finds that the ALJ was not under an obligation to grant these opinions special weight and the date of their issuance is relevant to their consideration. Further, due to the length of time between Dr. Robertson's opinion and plaintiff's alleged onset date, the Court finds that he is unlikely due controlling weight under the treating physician rule. The Court notes, however, that plaintiff has had ongoing mental impairments since 1998 and these opinions "may provide insight into the severity of the impairments and how it affects the individual's ability to function." Soc. Sec. Ruling 06–03p, WL 2329939, at *2.

21

Based on the length of time elapsed between these opinions and plaintiff's alleged onset date, the Court finds that the ALJ properly weighed the opinion evidence of both Dr. Robertson and Mr. Albert. The ALJ addressed Dr. Robertson's treatment records and functional analysis, specifically considering his assessment that plaintiff "would have difficulty maintaining a job due to a new list of expectations in work situations and difficulty modulating impulses and emotional behavior" [Tr. 23]. The ALJ further noted that Dr. Robertson found her "prognosis was good as long as claimant continues medications and vocational rehabilitation services." *Id.* The ALJ then proceeded to Mr. Albert's evaluation, noting his assessment that plaintiff "functioned in the mentally deficient range of functioning" along with plaintiff's poor performance and lethargy during evaluation. *Id*. The ALJ also considered Mr. Albert's opinion that plaintiff "would work best alone or with one or two other people but in close proximity to someone who can supervise" [Tr. 24]. In crafting his RFC, the ALJ explained that "Dr. Robertson, the claimant's treating physician, and Mr. Albert, vocational counselor, are accommodated in the residual functional capacity outlined above. Said assessments are more consistent with the overall medical evidence of record and the claimant's longitudinal treatment history" [Tr. 26].

The Court finds that this analysis satisfies agency procedure. The ALJ provided "good reasons" for the weight assigned Dr. Robertson and Mr. Albert and applied many of the factors set forth in 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2–6). The ALJ considered their treatment and examination relationships, along with the consistency and

supportability of their opinions. The ALJ also explained the weight assigned to their opinions by specifically stating that their opinions were "accommodated in the residual functional capacity outlined above" due to their consistency with the record as a whole [Tr. 26]. The Court finds no error in this analysis. The Court further finds that the ALJ did not err in not granting treating physician, Dr. Robertson, controlling weight. The length of time between his opinion and plaintiff's alleged onset date, along with plaintiff's substantial gainful activity, obviate the applicability of the treating physician rule. Further, the ALJ applied the factors set forth in 20 C.F.R. §§ 404.1527(c)(2–6) and 416.927(c)(2–6) and provided a sufficient explanation for the weight assigned to Dr. Robertson's opinion. Agency regulations require no more and neither shall this Court. Any argument to the contrary is without merit.

### b. Dr. Brietstein

Plaintiff further argues that the ALJ erred in not addressing Dr. Brietstein's vocational analysis [Doc. 18 at 18–21]. The Court disagrees. First, the ALJ specifically cited to Exhibit B-13E, which includes Dr. Brietstein's opinion, noting that plaintiff continued to exhibit "consistently poor judgment in the workplace once employed and exhibited difficulty working with others on multiple occasions" [Tr. 24; *see also* Tr. 269 (Dr. Brietstein noting that plaintiff has "difficulty interacting other people")]. Not only is plaintiff incorrect in stating the ALJ never acknowledged these records, he was under no explicit obligation to do so. The Court acknowledges the ALJ's duty to consider all the medical evidence on file. *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will

23

evaluate every medical opinion we receive."). However, the ALJ need not explicitly address and explain the weight assigned to each non-treating physician in order to properly consider the record as a whole. *See Loral Def. Sys.-Akron*, 200 F.3d at 453 ("[T]he fact that the ALJ's opinion failed to discuss all of the testimony and evidence presented to him does not mean that the ALJ 'failed to consider' the evidence.") (quoting *NLRB*, 174 F.3d at 13). Here, Dr. Brietstein was a non-treating physician who conducted a single examination for the purpose of plaintiff's vocational planning, not her allegations of disability [Tr. 267]. The ALJ explicitly cited to the exhibit containing Dr. Brietstein's opinion and concurred with some of his findings in considering plaintiff's ability to function in the workplace. The Court finds no error in this analysis.

Further, even if the ALJ did not provide Dr. Brietstein sufficient analysis, such an error was harmless. The ALJ specifically stated that he crafted an RFC to accommodate for plaintiff's "difficulties with social interaction, concentration, and adaptability" [Tr. 26]. Dr. Brietstein's recommendations took into account the same issues, noting that plaintiff may be able to sustain employment but "will need to learn to tolerate stress much more easily and will need to accept constructive criticism from her employers" [Tr. 270]. The Court also takes into consideration the portions of Dr. Brietstein's opinion deeming plaintiff's examination results invalid due to evidence of malingering. *See* [Tr. 269 ("Amy both exaggerated the severity of her complaints and gave infrequent responses, which suggests that she had significant problems attending to or interpreting the questions. As such, the results are considered invalid.")]. Plaintiff's exaggeration

24

reflects poorly on the validly of the examination results, especially when considered in conjunction with her behavior at Goodwill Industries. Although plaintiff's mental impairments likely impair her ability to interact socially, the Court is concerned that her inappropriate behavior, especially causing a scene "in the middle of the store" with her husband, [Tr. 240], evidences more of an unwillingness to work and a poor attitude rather than a mental disability. Therefore, the Court finds that Dr. Brietstein's report, even if included in great detail in the ALJ's decision, does not turn the disability analysis in plaintiff's favor. Any error in the ALJ's consideration of Dr. Brietstein was harmless.

Plaintiff further argues that the ALJ erred in not including her hand impairments, as identified by Dr. Brietstein and Goodwill Industries, in her RFC. *See* Doc. 18 at 23–24]. Plaintiff argues that "[t]hese two references, both emanating from vocational rehabilitation assessments, requires the ALJ to include such limitations in his hypothetical to the VE at the hearing" [Doc. 18 at 24]. The Court is unaware of the basis for plaintiff's proposed rule, and plaintiff has not cited any agency regulation or case law in support. Plaintiff points to only two statements in the record alluding to fine and gross hand manipulations. Dr. Brietstein briefly stated that plaintiff's "psychomotor slowing and impaired concentration contribute to her difficulty performing basic tasks in a timely fashion" [Tr. 270]. In relation to plaintiff's employment at Goodwill Industries, a vocational rehabilitation counselor noted that plaintiff "[d]isplayed very slow gross and fine bilateral finger/hand dexterities, fingering" [Tr. 262]. The Court is unaware of any treating, non-treating, or non-examining physician opinion identifying restrictions in

25

plaintiff's gross manipulations, nor did she identify this issue as an impairment during the administrative hearing or her disability report. *See* Tr. 48–49, 169. Further, plaintiff's own attorney stated during the administrative hearing that "it's not really a physical case. We think physically she's probably okay" [Tr. 55]. The Court finds plaintiff's contention of error to be without merit. The ALJ assessed plaintiff's RFC based on her actual and alleged impairments and employed that RFC in crafting a hypothetical for the VE. *See* Tr. 56–57.

### c.   Dr. D'Cruz

The Court also finds plaintiff's argument regarding the ALJ's consideration of Dr. D'Cruz to be without merit. The ALJ thoroughly and explicitly considered plaintiff's medical records from CHS, including Dr. D'Cruz's diagnoses. At step two, the ALJ noted that plaintiff's "symptoms have been treated with medications with good control of her symptoms. Paul D'Cruz, M.D., diagnosed bipolar disorder, generalized anxiety disorder, borderline intellectual functioning and attention-deficit hyperactivity disorder" [Tr. 23]. The ALJ further considered that "claimant was able to maintain a job with the University of Tennessee as a cleaner, for more than a year and that the claimant failed to exhibit increased stress when she was laden with increased responsibility" *Id.* In assessing her RFC, the ALJ noted that she "has required only conservative mental health treatment including counseling and medication managements. Treatment records from Dr. D'Cruz showed the claimant's symptoms were focused on situational stressors including relationship problems, and moving" [Tr. 26]. The Court notes that Dr. D'Cruz,

26

albeit a treating physician, did not submit a medical source statement or opinion as to plaintiff's functional abilities. Therefore, the treating physician rule does not apply. *See Pedigo*, 2009 WL 6336228, at *6. Without a treating physician opinion, the ALJ's only obligation was to consider plaintiff's treatment records in his analysis. *See* 20 C.F.R. § 404.1520(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled."). The ALJ did so and explicitly cited to portions of Dr. D'Cruz's throughout his disability analysis. Plaintiff's perfunctory argument regarding Dr. D'Cruz, consisting of one paragraph, is not only insufficient to constitute a colorable argument, but lacks any substantive or accurate basis of error. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)). The Court finds plaintiff's allegations of error to be without merit.

### d.    Dr. Wike

Finally, plaintiff alleges that the ALJ erred in the weight assigned to Dr. Wike [Doc. 18 at 21]. Plaintiff asserts that by declining to adopt all of Dr. Wike's limitations, the ALJ "improperly substituted his medical opinion for Dr. Wike" [Doc. 18 at 23]. The Court disagrees. Although an ALJ shall not "impermissibly substitute his own views for

27

an uncontroverted medical opinion[,]" she can and should "assess the credibility of witnesses and weigh and/or evaluate their testimony." *Wright*, 2009 WL 890051, at *11. An ALJ is free to reject or adopt medical evidence based on a consideration of the record and hearing testimony. *See Lenon v. Apfel*, 191 F. Supp. 2d 968, 978 (W.D. Tenn. 2001) (finding that an ALJ's rejection of a medical assessment was "supported by substantial evidence" because it was inconsistent with the medical evidence); 20 C.F.R. § 404.1527(e)(2)(i) ("Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists.").

Here, the ALJ did not substitute his opinion for that of Dr. Wike or create his own nonexertional limitations out of thin air. He considered the record as a whole, crafted his RFC based on the objective evidence, and discounted Dr. Wike's due to "the claimant's own admission that this was a 'bad' day for her and not necessarily a correct preponderance of her residual functional capacity" [Tr. 26–27]. The ALJ addressed Dr. Wike's opinion in more detail at step two, noting her one-time psychological evaluation and diagnoses of bipolar disorder, ADHD, and anxiety disorder [Tr. 23]. In explaining his RFC assessment, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence" [Tr. 25].

The ALJ's decision can be distinguished from the facts of *Lenon*, wherein the Court found the ALJ "gave in to the temptation to play doctor" by finding that "one could

28

not suffer from mild to moderate depression and have a poor ability to deal with the stresses of the workplace." 191 F. Supp. 2d at 978. Here, the ALJ did not substitute his own medical opinion for that of the medical professionals or make any medical diagnosis. To the contrary, he considered the medical evidence, adopted the medical opinions that were consistent with the record as a whole, and crafted plaintiff's RFC based on his analysis. He found Dr. Wike's opinion was not supported by the objective evidence due to plaintiff's exacerbated symptoms on the day of the exam [Tr. 26–27]. Such consideration complies with agency procedure, as set forth in 20 C.F.R. §§ 404.1527 and 416.927, and is far from "playing doctor." The ALJ followed agency protocol and his RFC assessment is supported by substantial evidence. Any argument to the contrary is without merit.

### (1) Credibility

Plaintiff argues that the ALJ erred in his credibility assessment. The Commissioner argues that the "ALJ's reasons for discrediting the [plaintiff's] allegations are reasonable and supported by substantial evidence in the record" [Doc. 20 at 4]. The Court concurs. An ALJ may consider the claimant's credibility when determining the basis of pain symptoms. *See Walters*, 127 F.3d at 531 (explaining that "[i]n evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant."). The ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* However, the ALJ's finding must be supported by substantial evidence.

29

*Id.* Our appellate court has articulated the standard for evaluating subjective complaints as follows:

> First, we examine whether there is objective medical evidence in an underlying medical condition. If there is, we then examine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan v. Sec. of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

In deciding whether the objective evidence confirms the severity of the alleged pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain, the ALJ must consider the following factors: (i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received or implemented for relief of pain or other symptoms; (vi) any other measures besides medical treatment that are used or were used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Rul. 96–7p, 1996 WL 374186, at *3 (S.S.A. July 2, 1996); 20 C.F.R. § 404.1529(c)(3). Although the ALJ is not required to address every factor, his "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the

30

weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3.

The Sixth Circuit has emphasized that "[t]his is a highly deferential standard. As a result, substantial evidence review 'gives the agency the benefit of the doubt, since it requires not the degree of evidence which satisfies the *court* that the requisite fact exists, but merely the degree which *could* satisfy a reasonable fact finder.'" *Claiborne-Hughes Health Ctr. v. Sebelius*, 609 F.3d 839, 843–44 (6th Cir. 2010) (quoting *Allentown Mack Sales & Serv., Inc. v. NLRB,* 522 U.S. 359, 377 (1998) (emphasis in the original)).

Here, the ALJ found that although plaintiff's impairments could "cause the alleged symptoms . . . statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" [Tr. 27]. The ALJ walked through plaintiff's treatment history, medication, diagnostic test results, hearing testimony, and daily activities and explained the weigh assigned to plaintiff's physicians [Tr. 22–27]. The ALJ specifically relied on plaintiff's conservative mental health treatment, the situational stressors contributing to her mental impairments, and her ability to maintain a relationship with her husband [*See* Tr. 26]. The ALJ further relied upon plaintiff's extensive daily activities, finding such activities "tend[] to minimize the degree of her complaints and subjective limitations" [Tr. 27]. The ALJ explained that her ability to cook, perform household chores, drive, care for her personal hygiene, run errands, retail and grocery shop, manage her finances, watch television, listen to the radio, visit with

family and friends, read, and talk on the telephone "only tends to negate the degree of her complaints of pain and other subjective limitations." *Id.*

Plaintiff contends that the ALJ erred in not adopting the portions of the record, specifically her function report, hearing testimony, and Dr. Wike's report, that corroborate her subjective complaints [*See* Doc. 18 at 25–27]. The Court disagrees. The ALJ weighed several of the factors set forth in Soc. Sec. Rul. 96–7p, 1996 WL 374186, at *3 and 20 C.F.R. § 404.1529(c)(3). Specifically, he noted plaintiff's daily activities, subjective complaints, the type, dosage, effectiveness of her medication, and other factors such as her diagnostic test results [*See* Tr. 22–27]. The ALJ was under no obligation to address every factor or every piece of evidence in the record, and plaintiff's argument to the contrary is without merit. It matters not whether plaintiff or this Court disagree or would have come to a different conclusion. *See Crisp*, 790 F.2d at 453 n.4. The only questions before the Court are whether the ALJ adhered to agency procedure and made a decision supported by substantial evidence. The Court finds in the affirmative in both regards. The ALJ's opinion was "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96–7p, 1996 WL 374186, at *3. Due to the highly deferential standard set forth by this Circuit, the Court finds the ALJ's credibility assessment to be supported by substantial evidence.

32

## VII.   CONCLUSION

Based upon the foregoing, plaintiff's Motion for Summary Judgment [Doc. 17] will be **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 19] will be **GRANTED**, and the Clerk of Court will be directed to **CLOSE** this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE